IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAMAR RAY STEELE, JR.,

    **Plaintiff,**

v.                                                                                                CASE NO. 25-3108-JWL

RONALD MILLER, ET AL.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Lamar Ray Steele, Jr. is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff, a federal pretrial detainee currently detained at Leavenworth Federal Correctional Institution, filed this pro se civil rights action alleging that his constitutional rights are being violated by the inadequate provision of medical care and by deliberate indifference to his serious medical needs. (Doc. 1, p. 4.) He names as Defendants Chief Ronald Miller and Chief Deputy Jerry Viera of the United States Marshals Service (USMS) because, as a federal pretrial detainee, he is in the custody of the USMS, although he is housed at a Bureau of Prisons (BOP) facility. *Id.* at 1-2. As relief, he asks that this case be "intertwined" with his pending criminal case in this Court, Case No. 22-cr-40085-TC, and he seeks monetary damages. *Id.* at 8. It is not clear what Plaintiff means by "intertwined," but nothing in this order should be construed as being intended to have any effect on the currently pending criminal case against Plaintiff.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or any portion thereof where a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. Discussion**

    **1. 42 U.S.C. § 1983**

Plaintiff's complaint is on the form required for actions brought under 42 U.S.C. §1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A defendant acts "under color of state law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (citations omitted).

3

The two named Defendants are Chief Ronald Miller and Chief Deputy Jerry Viera of the USMS. (Doc. 1, p. 1-2.) The USMS is a federal law enforcement bureau established by federal law. *See* 28 U.S.C. § 561. The power of a United States Marshal exists by virtue of federal law, *see* 28 U.S.C. § 564, and nothing in the complaint shows that either Defendant exercised power possessed by virtue of *state* law. Thus, they are not proper defendants in an action brought under 42 U.S.C. § 1983.

**2. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**

Liberally construed, the pro se complaint filed in this matter brings claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), but this matter is subject to dismissal because Plaintiff has not shown that a *Bivens* cause of action is available for his claims. Civil actions seeking relief from federal officials for alleged violations of constitutional rights historically have been brought under *Bivens*, which "created a cause of action against federal agents for a violation of the bill of rights" and "held that agents of the Federal Bureau of Narcotics could be liable for damages for an unlawful warrantless arrest and search and for employing unreasonable force in making the arrest. *See Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024) (citation omitted), *rehr'g denied* (Apr. 5, 2024).

The Tenth Circuit explained in 2024:

> Although the [United States Supreme] Court recognized causes of action under *Bivens* in two subsequent cases—a congressional staffer's Fifth Amendment Due Process sex-discrimination claim against a Member of Congress, *see Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for inadequate care of an inmate, *see Carlson v. Green*, 446 U.S. 14 (1980)—it is on course to treating *Bivens* as a relic of the 20th century. This development has been gradual, but relentless. Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not

> created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert*, 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").
>
> And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793.

*Logsdon*, 91 F.4th at 1355–56.

Even more recently, the Tenth Circuit referred to *Bivens* as "now all but dead." *See Rowland v. Matevousian*, 121 F.4th 1237, 1241-42 (10th Cir. 2024). The Tenth Circuit has been clear: "[E]xtending *Bivens* would be 'an action that is impermissible in virtually all circumstances.'" *Id.* at 1242 (quoting *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022)). Thus, when presented with a case containing claims such as Plaintiff's claims in the case now before this Court:

> [W]e must *first* examine whether [the] case arises in a new *Bivens* context[ or,] in other words, analyze whether [the] case is meaningful[ly] different from the three cases in which the Court has implied a damages action. *Second*, we must consider whether there are special factors suggesting that [the] Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Id.* (internal citations and quotation marks omitted) (quoting *Egbert* and *Ziglar v. Abbasi*, 582 U.S. 120 (2017)).

The case now before this Court is meaningfully different from *Bivens*, *Davis*, and *Carlson*. As noted above, *Bivens* involved a Fourth Amendment claim against agents of the Federal Bureau of Narcotics, *Davis* involved a Fifth Amendment due process claim against a member of Congress, and *Carlson* involved an Eighth Amendment claim against federal prison officials for deliberate indifference to his serious medical needs. Like *Carlson*, Plaintiff's claims are based on allegedly disregarded serious medical needs. But the Tenth Circuit has noted that even "'[s]mall' differences can 'easily satisf[y]' the 'new-context inquiry.'" *Rowland*, 121 F.4th at 243 (quoting *Ziglar*, 582 U.S. at 149).

Unlike the plaintiff in *Carlson*, Plaintiff in this matter is a pretrial detainee and brings his claim under the Fourteenth Amendment. Moreover, the plaintiff in *Carlson* alleged that prison officials acted against the doctor's orders and attempted to use a respirator known to be inoperative. *See id.* Here, Plaintiff has not alleged that prison officials acted against a doctor's orders, nor does he allege that an inoperable medical device was used on him. Thus, Plaintiff's claims are materially different than *Carlson* as well as materially different from *Bivens* and *Davis*, which means that Plaintiff's claims arise in a new *Bivens* context. *See id*.

Moreover, "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be

6

the institution to create a remedy." *See Logsdon* 91 F.4th at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quoting *Egbert*, 596 U.S. at 493). The existence of the alternative remedial structure is enough; it does not matter "if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Egbert*, 596 U.S. at 498.

In *Rowland*, the Tenth Circuit recognized and repeated its prior holding that the BOP's Administrative Remedial Program (ARP) provides "'means through which allegedly unconstitutional actions' (in this case, inadequate medical care) can be 'brought to the attention of the BOP and prevented from recurring.'" 121 F.4th at 1243-44 (quoting *Silva*, 45 F.4th at 1141). The Tenth Circuit concluded:

> As this court has held, the "availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." [*Silva*, 45 F.4th] at 1141. Accordingly, Mr. Rowland's *Bivens* claim fails, since "so long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 498, 142 S. Ct. 1793, 213 L. Ed. 2d 54 (2022). The existence of "alternative remedial structures . . . is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action,'" *id.* at 493, 142 S.Ct. 1793 (citation omitted), and that reason here, by way of the BOP's Administrative Remedial Program, forecloses Mr. Rowland's claim.

*Rowland*, 121 F.4th at 1244. *See also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* ... the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two."); *see also Johnson v. Terry*, 119 F.4th 840, 859-62 (110th Cir. 2024) (finding that the existence of the ARP precluded

extending *Bivens* to include a federal pretrial detainee's claims of deliberate indifference to serious medical needs).

Finally, the Tenth Circuit has instructed that

> the most relevant question under *Bivens* now is "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (citation omitted). And here, Congress will always be better suited to make such a call because, as the Supreme Court has emphasized, recognizing a *Bivens* action improperly merges the "Constitution's separation of legislative and judicial power." *Id.* at 491. And more importantly, courts are simply ill-suited to "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." *Id.* at 493 (citation omitted). "That uncertainty alone is a special factor that forecloses relief." *Id.* So, if "the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Id.* at 504 (Gorsuch, J., concurring). "At bottom, creating a cause of action is a legislative endeavor," and that is what every *Bivens* action requires courts to do. *Id.* at 491.

*Rowland*, 121 F.4th at 1244.

The same rationale applies here. First, the Court finds that Plaintiff's claims are materially different than *Bivens*, *Carlson*, or *Davis*. Second, even if they were not, they still would be foreclosed by the existence of the ARP. Third, this Court must recognize the fact that Congress is better suited to weigh the costs and benefits of allowing a damages action under Plaintiff's circumstances to proceed, which means that this Court may not extend *Bivens* to imply a cause of action for Plaintiff. For these reasons, the Court concludes that no cause of action exists by which Plaintiff may bring the claims he makes in this matter.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **July 10, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for failure to state a claim on which relief may be granted. If Plaintiff fails to timely file a response, this matter will be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

**Dated June 10, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
